# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT MONGLER, | ) |
|     *Plaintiff,* | ) 18 C 2585 |
| v. | ) Hon. Virginia M. Kendall |
| BRIAN KNIGHT, STRATEGIC LENDING SOLUTIONS, LLC, and KNIGHT ASSET MANAGEMENT, LLC, | ) |
|     *Defendants.* | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Mongler filed suit against Defendants Brian Knight, Strategic Lending Solutions, LLC (SLC), and Knight Asset Management, LLC (KAM) alleging claims of civil conspiracy to commit fraud (Count I) and civil conspiracy to commit constructive fraud (Count II). (Dkt. 1). Defendants filed a Joint Motion to Dismiss Count II (Dkt. 19) and a Joint Motion for Leave to File Counterclaim. (Dkt. 23). For the reasons stated below, the Court grants both Motions.

## BACKGROUND

The following facts set forth in Plaintiff's Complaint are accepted as true for the purpose of reviewing Defendants' Motion to Dismiss. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011).

Robert Mongler formed RGM Properties, LLC, a Missouri LLC that owned real property in Ware County, Georgia ("the Georgia Property") that in 2011 was appraised at a value of more than $3 million. (Dkt. 1 at ¶ 1). In 2011, Mongler was the sole member of RGM and RGM owned the Georgia Property free and clear of all liens and encumbrances. (*Id.*).

1

In September 2011, Brian Knight incorporated Capgain Properties, Inc. (called Capgain Holdings, Inc. as of 2013) ("Capgain") in Alberta, Canada and established its principal place of business in Lake in the Hills, Illinois. (*Id.* at ¶ 20). The Complaint alleges that from October 2011 to March 2012, Knight implemented a scheme whereby he induced sellers of real estate to provide deeds to Capgain by falsely promising that Capgain would in return issue the seller tradeable securities following the company's planned public launch on the Canadian stock exchange and, if Capgain did not issue the promised securities at the agreed upon value, would return the deeds to the sellers unencumbered. (*Id.*).

According to the Complaint, as part of this scheme Knight and Capgain conspired with other co-conspirators to divest RGM of the Georgia Property and, in turn, divest Mongler of the value of his membership interest RGM, all for no consideration. Knight's co-conspirators included Strategic Lending Solutions (SLS) and Knight Asset Management (KAM), both LLCs owned by Knight; Illinois attorney Michael Loprieno and LOP Capital LLC, a New Mexico LLC owned by Loprieno; and Ty Kirkpatrick and Consulting Direct, Inc. (CDI), a Delaware corporation owned by Kirkpatrick. (*Id.* at ¶¶ 6–9).

First, in October 2011, Knight and Capgain entered an agreement with Kirkpatrick and CDI, whereby CDI agreed to deed the Georgia Property to Capgain and Capgain agreed to either issue tradeable securities or return the deed to CDI. (*Id.* at ¶ 25). Knight and other co-conspirators knew that, at the time the agreement was entered into, RGM (not CDI) owned the Georgia Property and that CDI had no contract to purchase the Georgia Property or to purchase Mongler's membership interest in RGM. (*Id.* at ¶ 25). In fact, Kirkpatrick and CDI did not negotiate purchasing an interest in RGM with Mongler until the following month in November 2011. (*Id.* at ¶ 26).

Second, Knight and other co-conspirators through Kirkpatrick and CDI induced Mongler into selling his interest in RGM and, therefore, the Georgia Property for no consideration. On November 11, 2011, Mongler executed a Purchase and Sale Agreement for 100% of his interest in RGM to CDI for $3,350,000; Kirkpatrick never executed the Agreement on behalf of CDI. (*Id.*; *see also* Dkt. 1–3). A few months later on January 17, 2012, Kirkpatrick and CDI delivered a promissory note to Mongler for $3,350,000, secured by a deed on the Georgia Property. (*Id.* at ¶ 31). The Deed to Secure Debt falsely showed that CDI was the fee simple title owner of the Georgia Property in order to induce Mongler into believing that he in turn controlled a valid first lien on the Georgia Property. (*Id.*).

In fact, CDI had no interest in the Georgia Property because after Mongler unilaterally executed the Purchase and Sale Agreement, Knight and other co-conspirators created and recorded false deeds to make it appear on the public record as if Capgain (not RGM or CDI) was the fee simple owner of the Georgia Property. Specifically, on December 8, 2011, Kirkpatrick deeded 100% of the Georgia Property to Capgain ("Capgain Deed"). (*Id.* at ¶ 27). Kirkpatrick also delivered conflicting deeds for a one-third interest in the Property to each LOP ("LOP Deed") and SLS ("SLS Deed"). (*Id.*). Kirkpatrick never told Mongler that he had signed the deeds. (*Id.*). On January 6, 2012, Knight and KAM created false deeds deeding LOP's and SLS's false one-third interests in the Georgia Property to Capgain ("LOP-Capgain Deed" and "SLS-Capgain Deed"). (*Id.* at ¶ 29). Knight and the co-conspirators agreed to withhold recording of any deed until after CDI delivered the false Deed to Secure Debt to Mongler. (*Id.* at ¶¶ 28, 32). Then, starting in February 2012, KAM recorded the deeds: first recording the LOP Deed and SLS Deed so it would appear on the public record that LOP and SLS were in the chain of title before Capgain and second, in March 2012, recording the LOP-Capgain Deed, SLS-Capgain Deed and Capgain Deed so it

would appear Capgain was the fee simple owner of the Georgia Property free and clear of all claims and liens. (*Id.* at ¶ 32). In fact, neither LOP, SLS nor Capgain had paid anything for the Georgia Property or issued any securities in exchange for the deed. (*Id.* at ¶ 33).

Between March 2012 and January 2013, Knight and Capgain and Big Mojo Capital, Inc. (the public shell company that filed the securities offering and was later renamed Capital Holdings, Inc.) relied on the false records to make false representations in a Filing Statement and other documents filed with TSX Venture Exchange, a public stock exchange in Canada, that Capgain owned the Georgia Property free and clear of all claims and liens and that LOP and SLS were entitled to tradeable securities in exchange for the (false) one-third interest each had deeded to Capgain. (*Id.* at ¶ 34). Based on the false representations, TSX authorized the exchange of shares pending a promise to generate an additional $500,000 in revenue or raise an additional $1,000,000 in capital. (*Id.* at ¶ 35). Capgain failed to do either and eventually in 2018 was de-listed without its securities ever becoming tradable. (*Id.* at ¶ 50).

No co-conspirator ever transferred shares or other consideration to RGM or Mongler. (*Id.* at ¶¶ 38–39). In April 2013, Knight and other co-conspirators obtained a loan for $1,750,000 in exchange for a Deed to Secure Debt on the Georgia Property, effectively depriving Kirkpatrick and CDI from ever returning the Property to RGM and/or Mongler's membership interest in RGM to Mongler. (*Id.* at ¶ 45). Knight and the co-conspirators defaulted on the loan and, following a lawsuit in Ware County, Georgia, the lender obtained a judgment quieting title and finding RGM held no interest in the Georgia Property. (*Id.* at ¶ 48). After appealing the judgment, Mongler entered into a settlement agreement whereby the Property was re-vested in an LLC controlled by Mongler subject to a deed to secure debt payable to the lender for $500,000. (*Id.* at ¶ 49).

On January 31, 2017, Mongler filed a suit in the Eastern District of Missouri alleging conspiracy to commit fraud and other counts against Knight, SLS, Loprieno, Kirkpatrick, Capgain, LOP and CDI; KAM was not a named defendant. *See Mongler v. Knight, et al.*, No. 2:17 C 06 (E.D. Mo.) (Keenan, J.) ("Missouri Litigation"). In July 2017, the district court dismissed Knight and SLS from the Missouri Case without prejudice for lack of personal jurisdiction. (*Id.* at Dkt. 42). On April 6, 2018, following a jury trial, the district court in the Missouri Case entered a judgment of $500,000 for civil conspiracy to commit fraud against all remaining defendants, including Loprieno, Kirkpatrick, Capgain Properties f/k/a Big Mojo, Capgain Holdings f/k/a Capgain Properties, LOP and CDI. (*Id.* at Dkt. 107).

Two days later on April 11, 2018, Mongler filed the present suit against Knight, SLS and KAM alleging a conspiracy to commit fraud and conspiracy to commit constructive fraud by fraudulently creating, delivering and recording false deeds to the Georgia Property owned by RGM. (Dkt. 1). The Complaint alleges unnamed co-conspirators Kirkpatrick and CDI signed the false deeds, thereby divesting Mongler of his membership interest in RGM and RGM of the Georgia Property and deeding the property to SLS and unnamed co-conspirators LOP and Loprieno without any payment of consideration to Mongler. (*Id.*).

On June 18, 2018, Defendants timely filed a Joint Verified Answer and Affirmative Defenses and a Joint Motion to Dismiss the claim for conspiracy to commit constructive fraud. (Dkt. 18). Defendants' Joint Answer did not state any counterclaims against Plaintiff but on July 3, 2018, Defendants filed a Motion for Leave to File Counterclaim and now seek to add counterclaims against Plaintiff and cross claims against CDI and Kirkpatrick. (Dkts. 23, 29).

## DISCUSSION

I.  **Joint Motion to Dismiss**

Defendants seek to dismiss Plaintiff's claim for civil conspiracy to commit constructive fraud (Count II) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court construes the Complaint in the light most favorable to the Plaintiff, accepts all well-pleaded facts as true, and draws all inferences in his favor. *Heyde*, 633 F.3d at 516. However, "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 566 U.S. at 678).

To succeed on a claim of civil conspiracy under Illinois law, Plaintiff must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff"—here, constructive fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, N.E.2d 242, 258 (Ill. 1999)). Under Illinois law, "constructive fraud" includes "any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests

and public or private confidence." *Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800 (7th Cir. 2008) (quoting *Pottinger v. Pottinger*, 605 N.E.2d 1130, 1138 (Ill. App. Ct. 1992)). To establish constructive fraud, Plaintiff must show that defendant "(1) breached the fiduciary duty he owed to plaintiff and (2) knew of the breach and accepted the fruits of the fraud." *Id.* (quoting *Prodromos v. Everen Secs., Inc.*, 793 N.E.2d 151, 158 (Ill. App. Ct. 2003)). Therefore, Plaintiff's constructive fraud claim "requires the existence of a confidential or fiduciary relationship" between him and at least one of the alleged co-conspirators. *Id.*

Defendant first argues that any claim based on a fiduciary relationship between Plaintiff and an unnamed co-conspirator (*i.e.*, a named defendant in the Missouri Litigation) is barred by collateral estoppel. "For collateral estoppel to apply, (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (quotation omitted). During trial and at the close of Plaintiff's case in the Missouri Litigation, the district court granted Defendants' oral motion for judgment as a matter of law against Mongler and in favor of Loprieno, Kirkpatrick, Capgain, LOP and CDI on Mongler's claims for conspiracy to breach a fiduciary duty and conspiracy to commit constructive fraud under Missouri law. (Dkt. 24 at 3–4; Dkt. 19 at 3; Dkt. 19-2). The parties provide no record of the court's specific findings supporting these rulings. In his Response to Defendant's Motion to Dismiss, Plaintiff asserts only that according to Plaintiff's counsel's recollection and without reference to any transcript, the court entered judgment based on its findings that (1) no party owed Mongler a "fiduciary duty" and (2) monetary damages are not recoverable for constructive fraud under Missouri law. (Dkt. 24 at 4). Plaintiff

agrees neither of these issues can be re-litigated here but argues the issue before this Court—whether any co-conspirator had a "confidential or fiduciary relationship" with Plaintiff as required for a constructive fraud claim under Illinois law—is different. (*Id*. at 4–9).

Missouri courts typically treat claims for breach of fiduciary duty and claims for constructive fraud as one in the same. *See, e.g., Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. 1997) (en banc) ("A breach of a fiduciary obligation is constructive fraud. Constructive fraud is a long-recognized cause of action. Missouri courts typically label these claims as breach of fiduciary duty.") (citations omitted). Both require the plaintiff to show not only the existence of a "fiduciary or confidential relationship," *Day v. Hupp*, 528 S.W.3d 400, 416 (Mo. Ct. App. 2017) ("[C]onstructive fraud equates to a breach of a fiduciary or confidential relationship."), but also other elements including breach, causation and harm. *See Brown v. Brown*, 530 S.W.3d 35, 41 (Mo. Ct. App. 2017), *reh'g and/or transfer denied* (July 27, 2017), *transfer denied* (Oct. 31, 2017) ("To prevail on a claim of breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm."). The court in the Missouri Litigation could have entered judgment against Mongler on either claim for failure to prove any of one of the required elements, including but not necessarily the existence of a fiduciary or confidential relationship. Therefore, without the record, the Court cannot determine with any certainty whether the existence of such a relationship between Mongler and any of the unnamed co-conspirators in this case was in fact an issue "actually litigated" in the Missouri Litigation. Plaintiff's counsel's "recollection" of that court's findings is insufficient.

The Court notes that if this issue were actually litigated in the Missouri Litigation, any claim for conspiracy to commit constructive fraud based on a fiduciary or confidential relationship between Plaintiff and a named defendant in that case would be barred by collateral estoppel here

because, contrary to Plaintiff's contention, whether a "confidential or fiduciary relationship" exists under Illinois law or Missouri law is the same issue. Under both states' laws, in order to establish a "confidential or fiduciary relationship" exists, a plaintiff must show that one person placed trust and confidence in the purported fiduciary and that the purported fiduciary accepted this trust and responsibility, thereby assuming a position of superiority, dominance and influence over the other. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782–83 (7th Cir. 2015) ("A fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence. . . . The dominant party must *accept* the responsibility, *accept* the trust of the other party before a court can find a fiduciary relationship.") (applying Illinois law) (emphasis in original) (quotations omitted); *Kratky v. Musil*, 969 S.W.2d 371, 377, n.1 (Mo. Ct. App. 1998) (A confidential of fiduciary relationship "extends to instances in which a special confidence is reposed on one side and there is resulting domination and influence on the other.") (emphasis in original) (quoting *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 293–94 (Mo. Ct. App. 1983)); *Arnold v. Erkmann*, 934 S.W.2d 621, 630 (Mo. Ct. App. 1996) ("A fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary.") (quotation omitted). Therefore, a finding that no confidential or fiduciary relationship existed between Mongler and certain individuals under Missouri law would preclude any litigation over whether any confidential or fiduciary relationship existed between Mongler and those same individuals under Illinois law.

Regardless, Plaintiff's claim for conspiracy to commit constructive fraud must be dismissed for failure to allege that a confidential or fiduciary relationship existed between Mongler and *any* co-conspirator, whether or not named as a defendant in this case. The facts as alleged in

9

establish only one relationship between Mongler and any co-conspirator: that between Mongler and Kirkpatrick/CDI. This is because, according to the Complaint, Knight and the other co-conspirators at all times worked *through* Kirkpatrick and CDI to fraudulently divest Mongler and RGM of their property interests. The relationship between Mongler and Kirkpatrick/CDI does not constitute a "fiduciary or confidential relationship." The Complaint alleges only that Kirkpatrick and CDI proposed purchasing Mongler's interest in RGM, led Mongler to believe the parties had executed a Purchase and Sale Agreement, and provided Mongler with a promissory note secured by a false deed to the Georgia Property. These facts establish at most a business or contractual relationship between the parties but are insufficient to give rise to any fiduciary duty. *See Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005) ("The mere fact that business transactions occurred or that a contractual relationship existed is insufficient to warrant finding a fiduciary relationship.") (citation omitted). In particular, Plaintiff alleges no facts that Kirkpatrick or CDI agreed to take on any extra-contractual duties on behalf of Mongler or RGM. *See, e.g., Avila v. CitiMortgage*, Inc., 801 F.3d 777, 785 (7th Cir. 2015) (affirming dismissal where plaintiff "ha[d] not plausibly alleged that [defendant] assumed any additional, extra-contractual duties of a fiduciary nature"); *RSK Enterprises, LLC v. Comcast Spectacor, L.P.*, No. 17 C 2941, 2018 WL 319318, at *6 (N.D. Ill. Jan. 8, 2018) ("Generally, where parties 'capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party,' no fiduciary relationship exists.") (quoting *R.J. Mgmt. Co. v. SRLB Dev. Corp.*, 806 N.E. 2d 1074, 1083–84 (Ill. App. Ct. 2004)); *Yokel v. Hite*, 809 N.E.2d 721, 725 (Ill. App. 2004) ("Where one party to a business contract trusts the other to do no more than fulfill its obligations under the contract, no fiduciary duty arises.").

Plaintiff argues Kirkpatrick, Knight and Loprieno each knew Kirkpatrick had not in fact paid Mongler for his interest in RGM and, therefore, had a "duty to speak" to advise Mongler of the executed but unrecorded deeds as of January 2011. "[A] duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). "This position of superiority may arise by reason of friendship, agency, or experience." *Id.* But again, mere knowledge of the unrecorded deeds is insufficient to establish such relationship of trust. In fact, as the Complaint shows, Plaintiff need not be aware of, let alone trust, any individual for that individual to know about the executed but unrecorded deeds.

Accordingly, Plaintiff's claim for conspiracy to commit constructive fraud (Count II) is dismissed without prejudice for failure to sufficiently allege a fiduciary or confidential relationship existed between Mongler and any alleged co-conspirator.

## II. Joint Motion for Leave to File Counterclaim

In their Joint Motion for Leave to File Counterclaim, Defendants seek leave to amend their Answer to add counterclaims against the Plaintiff, pursuant to Federal Rule of Civil Procedure 15. (Dkt. 23 at ¶¶ 2, 5–6). Defendants assert that they do not seek leave to amend in bad faith or in an effort to cause undue delay (*id.* at ¶ 7) and that allowing them to amend while the case is still in its initial stages would be reasonable, in the interest of justice and cause no undue delay to Plaintiff. (*Id.* at ¶¶ 4, 7). Defendants do not provide any description whatsoever of the proposed counterclaims in the Motion itself.

However, in their Reply brief and at the July 24, 2018 hearing before this Court, Defendants explained that they in fact intend to add *both* counterclaims against Plaintiff and cross claims

11

against Kirkpatrick and CDI.  (*See* Dkt. 29).  Specifically, it appears based on the Defendants' representations to this Court to date that they intend to allege the following in their counterclaims and cross claims, if permitted: that Kirkpatrick/CDI owed Defendants a debt in 2010, delivered the deed for the Georgia Property to Defendants in 2011 in exchange for Defendants' release of their claims against them, and then subsequently conspired with Plaintiff to fraudulently void that deed by filing a Deed to Secure Debt on the Georgia Property and clouding title to the property after Kirkpatrick had deeded the property to Defendants.  (*See, e.g.,* Dkt. 29 at 3).  Defendants fail to provide any further argument as to *why* they should be allowed to add these claims now under the applicable rules.

Rule 15 governs the amendment of pleadings before trial and allows a party to amend its pleading once as a matter of course within 21 days of serving it.  Fed. R. Civ. P. 15(a)(1)(A).  After the 21-day period has passed, a party must seek the opposing party's written consent or leave from the court to amend its pleading.  Fed. R. Civ. P. 15(a)(2).  Here, Defendants filed their Answer on June 18, 2018 and filed their Motion for Leave to File Counterclaim 15 days later on July 3, 2018.  Pursuant to Rule 15(a)(1)(A), Defendants could have instead filed an amended Answer as a matter of course on July 3 but for whatever reason chose not to do so.  Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course within . . . 21 days after serving it.").  The 21-day window has since passed and the Defendants must now seek leave from the Court to file an amended Answer.

Rule 15 instructs the court to grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  "Although leave to amend should be freely given, that does not mean it must always be given."  *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (citing Fed. R. Civ. P. 15(a)).  The Court need not allow an amendment when there is undue delay, bad faith, dilatory

motive, or undue prejudice to the opposing party. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860–61 (7th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave should also be denied if the amendment would be futile, for example, if the proposed claim could not withstand a motion to dismiss. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (citing *Foman,* 371 U.S. at 182).

Although not addressed in either party's briefs, Defendants' request is also subject to Rules 13 and 20 governing counterclaims and cross claims, respectfully. Rule 13(a) requires that Defendants file a counterclaim against Mongler "if the claim arises out of the transaction or occurrence that is the subject matter of [Mongler's] claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). The proposed conspiracy counterclaim as described by Defendants relates to the same transaction, *i.e.* the Deed to Secure Debt issued by Kirkpatrick/CDI to Mongler, and the same property that are the subject matter of the claims in Plaintiff's Complaint and Defendants need not add any other party to allege the claim against Mongler. Therefore, the counterclaim appears to be compulsory.

Rule 13(g) permits parties to an action to file cross claims against a co-party "if the claim arises out of the transaction or occurrence that is the subject matter of the original action" or "if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). Rule 20 governs the addition of non-parties to the case through a cross claim, *see* Fed. R. Civ. P. 13(h), and provides that parties may be joined as defendants to an action through a cross claim if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The proposed cross claim as explained by Defendants would assert

liability for the same civil conspiracy jointly or in the alternative against Kirkpatrick/CDI and Plaintiff and give rise to question of law and fact common to all alleged co-conspirators. Therefore, if leave to amend is granted and barring any issues with personal jurisdiction, the purported cross claim would be permissible under Rules 13 and 20.

Plaintiff does not dispute that the proposed additional claims would be permissible under these Rules or argue that the Court should deny the Motion under Rule 15 on the grounds of undue delay, bad faith, dilatory motive, or undue prejudice. Plaintiff argues the claims should be prohibited on the following grounds: (1) the Court will not have personal jurisdiction over the cross-claim defendants; (2) the proposed claims allege damages to Capgain (not Defendants) and Defendants have no standing to raise claims on behalf of Capgain; (3) the proposed cross claim is barred by claim and issue preclusion because it constituted a compulsory counterclaim against Capgain in the Missouri litigation and Defendants failed to raise it there; and (4) Plaintiff should be barred from filing any claim in this Court because he has failed to pay sanctions issued against him by another court in the Northern District of Illinois. (*See* Dkt. 27).

With regard to the first argument, Defendants have not yet filed the proposed cross claims or supporting jurisdictional statements. The Court cannot make jurisdictional determinations in a vacuum and, therefore, such arguments are better left for a Rule 12 motion brought by the party of interest (which would be Kirkpatrick and CDI, not Plaintiff) after the claim is filed, if at all. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (Once challenged, plaintiff bears the burden of demonstrating personal jurisdiction exists and may submit affidavits and other written materials to make such showing.). Plaintiff's second and third arguments are moot as Defendants have since clarified that they seek to state cross claims against Kirkpatrick and CDI, not Capgain.

14

Finally, Defendants seek to bar filing of any claims by Plaintiff for failure to pay sanctions in a case before Judge Kennelly, *CapGain Properties, Inc. et al. v. Landmaster Partners, LLC*, No. 15 C 9234 (N.D. Ill). In that case, Capgain and Brian Knight filed suit against Landmaster Partners, LLC for breach of contract related to Capgain's acquisition of oil and gas leases held by Landmaster. (*Id.* at Dkt. 1). At one point in the case, Landmaster moved to dismiss the complaint and for sanctions against Capgain and Knight for failure to prosecute their case and to comply with the Federal Rules of Civil Procedure, including failure to respond to defendant's requests for admissions. (*Id.* at Dkt. 52). The court denied the motion to dismiss but granted the motion for sanctions, ordering Capgain and Knight to pay $3,850 in attorney's fees incurred by Landmaster in preparing and briefing its motion. (*Id.* at Dkts. 60, 71). The court ordered the sanctions to be paid within 21 days of its Order. (*Id.*). Plaintiffs failed to timely pay the court-imposed monetary sanction. (*Id.* at Dkt. 93).

Landmaster then filed a motion for summary judgment relying primarily on the deemed admissions (*id.* at Dkt. 61), and Capgain and Knight moved to reopen the time to respond to the requests for admissions and to withdraw the deemed admission. (*Id.* at Dkt. 72). The court ordered that as a condition for withdrawal of the deemed admissions, Capgain and Knight must pay $5,425 to Defendant by April 28, 2017. (*Id.* at Dkts. 88, 99). Capgain and Knight failed to pay the $5,425.

In a Response to the court's order to show cause as to the delayed payment of sanctions, Capgain and Knight explained that they were unable to pay either the $3,850 or $5,425 court-ordered sanction due to "immense financial strain" caused by Defendants' actions leading to Plaintiff's cause of action. (*Id.* at Dkt. 97). The court denied Capgain and Knight's motion to withdraw the deemed admissions for failure to pay the $5,425 court-imposed fee sanction. (*Id.* at Dkt. 106). Capgain and Knight then appealed the court's ruling on summary judgment and the

Seventh Circuit dismissed the appeal for lack of jurisdiction because the defendant's counterclaims had been dismissed without prejudice and could, therefore, still be re-filed. (*Id.* at Dkt. 120). It appears from the docket in that case that the first sanction for $3,850 in attorney's fees remains unpaid.

Plaintiff cites no case law to support his position that Defendants must be prohibited from filing any claim in this district due to Knight's failure to pay the sanctions imposed against him by Judge Kennelly. As recognized in *Support Systems International, Inc. v. Mack*, courts are permitted to enjoin litigants from filing any civil motions, except those necessary to protect him from confinement, without leave of the court unless and until that litigant pays in full the sanction(s) imposed against him. 45 F.3d 185, 186 (7th Cir. 1995); *see also Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997) (imposing fine and *Mack* order against litigant who repeatedly filed frivolous claims, directing the clerk of the court to return as unfiled any papers tendered in civil litigation until he paid the fee); *In re City of Chicago*, 500 F.3d 582, 585 (7th Cir. 2007) (*Mack* orders, which require a litigant to do no more than "meet the financial obligations that he has incurred by virtue of his past litigation," are "consistent with the Constitution."). However, as recognized in *Mack*, any sanction imposed by a federal court for abuse of process, including a no-filings order, must be tailored to the abuse at issue and courts generally permit exceptions to the no-filing order where the litigant is financially unable to pay the sanctions imposed against him. *See Mack*, 45 F.3d at 187 (A "possible exception to the no-filings order would be for proof of indigency."); *see also, e.g., Dallas v. Gamble*, 448 F. Supp. 2d 1020, 1023 (W.D. Wis. 2006) ("It would be unreasonable to hold that a litigant subject to a *Mack* order is precluded from communicating to the court valid concerns he might have about his ability to

satisfy the sanctions imposed upon him. . . .[F]iling bars such as those imposed in *Mack* are to be designed to curb the particular abuse at issue.").

Here, Defendants are not currently subject to a *Mack* order but Plaintiff's motion essentially seeks for this Court to impose one. As an initial matter, Judge Kennelly imposed sanctions against Knight, not against either SLS or LOP. Additionally, Knight represents that he has failed to pay the sanction because he is financially unable to do so. *Mack* specifically recognized a possible exception to a bar on filings where the litigant failed to pay the sanctions ordered due to indigency. Finally, prohibiting Knight from filing the claims would, in effect, expand the sanctions imposed by Judge Kennelly beyond the $3,850 fee and denied request to withdraw his deemed admissions in that case to also foreclose him from ever filing what appears to be a potentially compulsory counterclaim against Mongler in this case. For these reasons, the Court will not bar Defendants from filing the proposed counterclaim and cross claims here based on Knight's failure to pay the $3,850 sanction imposed in another case.

Defendants' Joint Motion for Leave to File Counterclaim (Dkt. 23) is granted.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. 19) is granted. Count II of Plaintiff's Complaint is dismissed without prejudice. Defendants' Joint Motion for Leave to File Counterclaim (Dkt. 23) is granted. Defendants shall file an Amended Answer including the newly added counterclaims and cross claims by 11/30/18.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: November 12, 2018

17